## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HAPPY HEALING INC, and**<br>**FENBEN INC,** | |
| **Plaintiffs,** | **Civil Case No.** |
| **v.** | |
| **UAB "CANCHEMA";**<br>**UAB "CURALTUS";**<br>**VYTAUTUS PELAKAUSKAS;**<br>**DOE ENTITIES 1-10; and**<br>**JOHN/JANE DOES 1-10,** | |
| **Defendants.** | |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND FOR DECLARATORY JUDGMENT

Plaintiff Happy Healing Inc (hereinafter "Plaintiff Happy Healing") and Plaintiff Fenben Inc (hereinafter "Plaintiff Fenben") (collectively "Plaintiffs"), for their causes of action against Defendants, UAB "Canchema" (hereinafter "Defendant Canchema"), UAB "Curaltus" (hereinafter "Defendant Curaltus"), Vytautas Pelakauskas (hereinafter "Defendant Pelakauskas"), Doe Entities 1-10, and John/Jane Does 1-10, (collectively "Defendants"), allege as follows:

### INTRODUCTION

1.      This is an action in law and equity for: false designation of origin under the Lanham Act, 15 U.S.C. § 1125; common law trademark infringement; appropriation of name, brand, trademark, reputation or goodwill of maker by dealer in product of maker under New Jersey Stat. § 56:4-1; and for a declaratory judgment on the basis of Defendants' fraudulent misrepresentations to consumers.

2.      Plaintiffs bring this lawsuit to protect the substantial goodwill developed through extensive marketing and sales of Plaintiffs' fenbendazole products and services under their FENBEN family of trademarks, including without limitation, FENBEN, FENBEN BIO, FENBEN PURE, FENBEN TRIO, FENBEN TABS, and FENBEN INC. (hereinafter "Plaintiffs' FENBEN Marks").

3.      Plaintiff Happy Healing is the owner of the following trademarks: FENBEN, FENBEN BIO, FENBEN PURE, FENBEN TRIO, and FENBEN TABS.

4.      Plaintiff Fenben is the owner of the following trademark: FENBEN INC.

5.      Plaintiff Happy Healing is a licensee of Plaintiff Fenben's FENBEN INC. trademark.

6.      Plaintiff Fenben is the licensee of Plaintiff Happy Healing's FENBEN, FENBEN BIO, FENBEN PURE, FENBEN TRIO, and FENBEN TABS trademarks.

7.      Plaintiff Happy Healing and Plaintiff Fenben are affiliated entities, and they accrue goodwill for the other when using their family of FENBEN Marks.

8.      Through tireless research, advertising, and other efforts and labor of Plaintiffs, Plaintiffs' FENBEN Marks, have gained, not only a nationwide following, but a reputation as being a source of high-quality and effective chemical reagents.

9.      As a result of Plaintiffs' long-standing use of their FENBEN Marks, consumers have come to associate FENBEN with Plaintiffs' goods and services.

10.     The goodwill and reputation for quality that Plaintiffs have worked so hard to cultivate are being irreparably damaged by Defendants' actions.

11.     Defendant Canchema conducts its business under the composite trademark (design and words) shown below (hereinafter the "FENBEN LAB Mark").



12. The FENBEN LAB Mark is confusingly similar to each of Plaintiffs' FENBEN Marks.

13. Defendant Curaltus conducts its business under the FENBEN LAB Mark.

14. Upon information and belief, Defendant Pelaskauskas has an ownership interest in and/or controls Defendant Canchema.

15. Upon information and belief, Defendant Pelaskauskas has an ownership interest in and/or controls Defendant Curaltus.

16. Defendants offer similar goods in the same geographic region as Plaintiffs.

17. Defendants target Plaintiffs' actual and potential consumers.

18. Defendants sell their products in the same channels of distribution as the Plaintiffs.

19. Some of Defendants' products and Plaintiffs' products are used by the Parties' respective customers in the same way or for the same purpose.

20. Plaintiffs and Defendants are not affiliated with each other.

21. None of the Plaintiffs have authorized any of the Defendants to use Plaintiffs' FENBEN Marks.

22. Defendants' use of the FENBEN LAB Mark is highly likely to cause confusion among consumers with regard to the source or origin represented by the Parties' respective marks.

23. Defendants' actions have caused, and are causing, irreparable harm to Plaintiffs and must be enjoined to safeguard the goodwill established by Plaintiffs in the FENBEN family of marks.

## PARTIES

24.     Plaintiff Happy Healing Inc is a corporation formed under the laws of North Carolina with a principal place of business in North Carolina. The address of Plaintiff Happy Healing's corporate headquarters is 744 Merritt Capital Drive, Ste 104, Wake Forest, North Carolina, 27587.

25.     Plaintiff Fenben Inc is a corporation formed under the laws of North Carolina with a principal place of business at 744 Merritt Capital Drive, Ste 104, Wake Forest, North Carolina, 27587.

26.     According to the electronic records of the U.S. Patent and Trademark Office, Defendant UAB "Canchema" identifies itself as a limited liability company formed under the laws of Lithuania with a principal place of business in Lithuania at Piliakalnio 7, 06229 Vilnius, Lithuania. Upon information and belief, Defendant Canchema's Lithuanian business registration number is 303236279.

27.     According to the electronic records of the U.S. Patent and Trademark Office, Defendant UAB "Curaltus" identifies itself as a limited liability company formed under the laws of Lithuania with a principal place of business in Lithuania at Piliakalnio 7, 06229 Vilnius, Lithuania. Upon information and belief, Defendant Curaltus' Lithuanian business registration number is 303419202.

28.     Defendant Canchema also refers to itself from time to time as "Canchema Ltd." and "Canchema Ltd" (without the period).

29.     Defendant Curaltus also refers to itself from time to time as "Curaltus Ltd." and "Curaltus Ltd" (without the period).

30.    Upon information and belief, the designation "UAB" is an abbreviation of "*Uždaroji akcinė bendrovė*", a Lithuanian corporate form approximately analogous to a limited liability company.

31.    Upon information and belief, Defendant Pelaskauskas is an individual residing in Lithuania, who has an ownership interest in and/or controls and/or is an agent of Defendant Canchema.

32.    Upon information and belief, Defendant Pelaskauskas is an individual residing in Lithuania, who has an ownership interest in and/or controls and/or is an agent of Defendant Curaltus.

33.    Upon information and belief, Defendants conduct and/or have conducted business in the United States via their online sales interfaces and accounts, including without limitation,

(a.) the eBay storefront "fenben-lab";

(b.) the Amazon.com store "FenbenLab";

(c.) the Amazon.com store "DCA STORE" ;

(d.) the Amazon.com store "DCA-LAB";

(e.) the website www.dcalab.com;

(f.) the website www.fendashop.com;

(g.) the Bonanza.com booth "FENDA Store";

(h.) the Bonanza.com Booth Owner account "DCA_LAB";

(i.) the account sales@canchema.com; and

(j.) the account dcalietuva@gmail.com

34.    Doe Entities 1-10 are fictitious parties, the proper identities of which are not presently known to the Plaintiffs but who are, upon information and belief, entities which have engaged in conduct which has damaged the Plaintiffs and/or unlawfully benefitted the Defendants,

and/or both. Plaintiffs shall amend these pleadings as the identity/identities of these entities are made known to them.

35.     John and Jane Does 1-10 are fictitious parties, the proper identities of which are not presently known to the Plaintiffs but who are, upon information and belief, individuals who are officers, employees, and/or agents of the named Defendants hereto and/or the fictitious defendants designated as "Doe Entities 1-10" and are responsible for these defendants' conduct and operations in their representative capacity. Plaintiffs shall amend these pleadings as the identity/identities of these individuals are made known to them.

## JURISDICTION AND VENUE

36.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, because this action involves claims arising under federal law; namely, the Lanham Act.

37.     This Court has subject matter jurisdiction over Plaintiffs' declaratory judgment claim under 28 U.S.C. § 2201 because there exists an actual, justiciable, and substantial controversy between Plaintiffs and Defendants regarding Defendants' misuse of the ® in connection with the FENBEN LAB Mark.

38.     This Court has supplemental jurisdiction over Plaintiffs' related state law claim pursuant to 28 U.S.C. § 1367 because it is part of the same case or controversy and arise out of a common nucleus of operative facts with the federal claims.

39.     This Court has specific personal jurisdiction over Defendant Canchema because Defendant Canchema conduct business in and has extensive contacts with the State of New Jersey.

40.     Upon information and belief, Defendant Canchema owns, leases and/or operates one or more warehouses and/or distribution centers in New Jersey.

41.    Upon information and belief, Defendant Canchema stores inventory bearing the FENBEN LAB Mark in one or more warehouses and/or distribution centers in New Jersey.

42.    Upon information and belief, Defendant Canchema has caused products that infringe Plaintiffs' trademark rights in Plaintiffs' FENBEN Marks to be sold and shipped to residents of New Jersey.

43.    This Court has specific personal jurisdiction over Defendant Curaltus because, upon information and belief, Defendant Curaltus conducts business in and has extensive contacts with the State of New Jersey.

44.    Upon information and belief, Defendant Curaltus has infringed Plaintiffs' trademark rights in Plaintiffs' FENBEN Marks by causing products bearing the FENBEN LAB Mark to be sold and shipped to residents of New Jersey.

45.    Defendants also advertise and promote their products connected with the FENBEN LAB Mark to residents of New Jersey.

46.    Defendants also misappropriate Plaintiffs' FENBEN MARKS in advertising and promoting Defendants' products that are similar to Plaintiffs' products offered and sold in connection with Plaintiffs' FENBEN Marks to residents of New Jersey.

47.    Upon information and belief Defendant Vytautas Pelaskauskas is the moving, active, conscious force behind all infringement and wrongful acts alleged herein. Upon information and belief, Defendant Vytautas Pelaskauskas, in actual effect, controls Defendant Canchema and Defendant Curaltus. Further, as explained further herein, Defendant Vytautas Pelaskauskas has used and continues to use Defendant Canchema, Defendant Curaltus, and others, including without limitation and upon information and belief, Doe Entities 1-10 and/or John and Jane Does 1-10 to engage in all infringement and wrongful acts alleged herein.

48. Upon information and belief, Defendants specifically target key words in their Google Ads campaigns that are intended to attract consumers residing in New Jersey.

49. Defendants thus purposefully avails themselves of the privilege of doing business in New Jersey.

50. The causes of action asserted in this Complaint arise out of Defendants' contacts with New Jersey.

51. Defendants have caused tortious injury to Plaintiffs in New Jersey.

52. The exercise of specific personal jurisdiction over Defendants in this action does not violate constitutional due process and does not otherwise run afoul of the Constitution and other laws of the United States.

53. Further, Defendants are not subject to general personal jurisdiction in any state within the United States. As indicated above, the exercise of personal jurisdiction over Defendants by this Court is consistent with the Constitution and laws of the United States given Defendants' extensive contacts with the State of New Jersey. Therefore, to the extent that no other basis for personal jurisdiction exists with respect to Defendants, the exercise of personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2) upon service of process upon Defendants or upon the filing of a waiver of formal service of process by Defendants.

54. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this Judicial District, and because Defendants have caused tortious injury to Plaintiffs in this Judicial District. In the alternative, were venue to be found lacking under U.S.C. § 1391(b)(2), venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(3).

**FACTUAL BACKGROUND**

55.    Plaintiffs own rights to a family of FENBEN trademarks that include, without limitation, FENBEN, FENBEN BIO, FENBEN INC., FENBEN PURE, FENBEN TRIO, and FENBEN TABS. Plaintiff' trademarks are referred to herein collectively as Plaintiffs' "FENBEN Marks."

56.    Each of the FENBEN Marks include FENBEN as either the sole component or otherwise dominant component.

57.    Plaintiff Happy Healing and Plaintiff Fenben  are affiliated entities, and they accrue goodwill for themselves and for each other when using their family of FENBEN Marks.

58.    Plaintiffs market and sell fenbendazole for use as a chemical reagent for research purposes under Plaintiffs' FENBEN Marks.

59.    Plaintiffs' FENBEN Marks represent to consumers Plaintiffs' high-quality products and associated retail store services and have garnered significant goodwill and consumer recognition over the course of years.

60.    Through their investment of substantial time, capital, and other resources, Plaintiffs have built a strong reputation and brand identity that consumers associate with integrity, effectiveness, and trust.

61.    Plaintiffs' FENBEN Marks have acquired distinctiveness and secondary meaning among consumers as a result of the long-standing use of the FENBEN Marks dating back to at least as early as October 31, 2017, by Plaintiffs and their respective predecessors in interest.

62.    Plaintiff Happy Healing's use of the FENBEN Marks in commerce in connection with Plaintiffs' fenbendazole products pre-dates the earliest actual or constructive first use in commerce date to which Defendants can accurately lay claim with regard to the FENBEN LAB Mark.

63.    Plaintiffs possess priority of use and, therefore, ownership of Plaintiffs' FENBEN Marks when used in connection with chemical reagents for research and related goods and services.

64.    Defendant Canchema, without authorization, has adopted and used the FENBEN LAB Mark, which is confusingly similar to Plaintiffs' FENBEN Marks, in connection with the sale and/or offering for sale of Defendants' goods and services that are highly related to Plaintiffs' goods and services sold and/or offered for sale in connection with Plaintiffs' FENBEN Marks.

65.    Defendant Canchema, without authorization, has misused Plaintiffs' FENBEN Marks, in connection with the sale and/or offering for sale of Defendants' goods and services that are highly related to Plaintiffs' goods and services sold and/or offered for sale in connection with Plaintiffs' FENBEN Marks.

66.    Defendant Curaltus, without authorization, has adopted and uses the FENBEN LAB Mark, which is confusingly similar to Plaintiffs' FENBEN Marks, in connection with the sale and/or offering for sale of Defendants' goods and services that are highly related to Plaintiffs' goods and services sold and/or offered for sale in connection with Plaintiffs' FENBEN Marks.

67.    Defendant Curaltus, without authorization, has misused Plaintiffs' FENBEN Marks, in connection with the sale and/or offering for sale of Defendants' goods and services that are highly related to Plaintiffs' goods and services sold and/or offered for sale in connection with Plaintiffs' FENBEN Marks.

68.    The FENBEN LAB Mark is highly similar to Plaintiffs' FENBEN Marks in appearance, sound, connotation, and commercial impression.

69.    The FENBEN LAB Mark includes the entirety of Plaintiff Happy Healing's FENBEN trademark.

70.    The FENBEN LAB Mark contains the dominant FENBEN element of Plaintiff's FENBEN Marks.

71.    The FENBEN LAB Mark contains the dominant FENBEN element of Plaintiff Fenben's FENBEN INC. trademark.

72.    Defendants' use in commerce of the FENBEN LAB Mark is highly likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiffs.

73.    The Parties' respective products offered under their respective marks are highly related to one another.

74.    Defendant Canchema admits that it uses the FENBEN LAB Mark in commerce in connection with chemical substances, chemical compositions, and chemical preparations for use in industry and science; chemical preparations for scientific purposes, other than for medical or veterinary use; and chemical reagents, other than for medical or veterinary purposes.

75.    The chemical substances with which Defendant Canchema uses the FENBEN LAB Mark are highly similar if not identical to the research chemicals with which Plaintiffs use Plaintiffs' FENBEN Marks.

76.    Defendant Canchema's' marketing of chemical substances is also highly similar to Plaintiffs' retail store services featuring chemical reagents for research purposes.

77.    Defendant Canchema's marketing, advertising, promotion, offer for sale and sale of its chemical substances are confusingly similar to Plaintiffs' retail store services.

78.    Defendant Canchema's marketing, advertising, promotion, offer for sale and sale of its chemical substances are likely to cause confusion amongst consumers regarding Plaintiffs' retail store services.

79.     Defendant Curaltus admits that it uses the FENBEN LAB Mark in commerce in connection with chemical substances, chemical compositions, and chemical preparations for use in industry and science; chemical preparations for scientific purposes, other than for medical or veterinary use; and chemical reagents, other than for medical or veterinary purposes.

80.     The chemical substances with which Defendant Curaltus uses the FENBEN LAB Mark are highly similar if not identical to the research chemicals with which Plaintiffs use Plaintiffs' FENBEN Marks.

81.     Defendant Curaltus' marketing of chemical substances is also highly similar to or related to Plaintiffs' retail store services featuring reagents for retail purposes.

82.     Defendant Curaltus' marketing, advertising, promotion, offer for sale and sale of its chemical substances are confusingly similar to Plaintiffs' retail store services.

83.      Defendant Curaltus' marketing, advertising, promotion, offer for sale and sale of its chemical substances are likely to cause confusion amongst consumers regarding Plaintiffs' retail store services.

84.     Defendant Pelakauskas admits that he uses the FENBEN LAB Mark in commerce in connection with chemical substances, chemical compositions, and chemical preparations for use in industry and science; chemical preparations for scientific purposes, other than for medical or veterinary use; and chemical reagents, other than for medical or veterinary purposes.

85.     The chemical substances with which Defendant Pelakauskas uses the FENBEN LAB Mark are highly similar if not identical to the research chemicals with which Plaintiffs use Plaintiffs' FENBEN Marks.

86.     Defendant Pelakauskas' marketing of chemical substances is also highly similar to or related to Plaintiffs' retail store services featuring reagents for retail purposes.

87. Defendant Pelakauskas' marketing, advertising, promotion, offer for sale and sale of his chemical substances are confusingly similar to Plaintiffs' retail store services.

88. Defendant Pelakauskas' marketing, advertising, promotion, offer for sale and sale of his chemical substances are likely to cause confusion amongst consumers regarding Plaintiffs' retail store services.

89. Doe Entities 1-10 use the FENBEN LAB Mark in commerce in connection with chemical substances, chemical compositions, and chemical preparations for use in industry and science; chemical preparations for scientific purposes, other than for medical or veterinary use; and chemical reagents, other than for medical or veterinary purposes.

90. The chemical substances with which Doe Entities 1-10 use the FENBEN LAB Mark are highly similar if not identical to the research chemicals with which Plaintiffs use Plaintiffs' FENBEN Marks.

91. The marketing of chemical substances by Doe Entities 1-10 is also highly similar to or related to Plaintiffs' retail store services featuring reagents for retail purposes.

92. The marketing, advertising, promotion, offer for sale and sale of chemical substances by Doe Entities 1-10 is confusingly similar to Plaintiffs' retail store services.

93. The marketing, advertising, promotion, offer for sale and sale of chemical substances by Doe Entities 1-10 is likely to cause confusion amongst consumers regarding Plaintiffs' retail store services.

94. John/Jane Does 1-10 use the FENBEN LAB Mark in commerce in connection with chemical substances, chemical compositions, and chemical preparations for use in industry and science; chemical preparations for scientific purposes, other than for medical or veterinary use; and chemical reagents, other than for medical or veterinary purposes.

95.    The chemical substances with which John/Jane Does 1-10 use the FENBEN LAB Mark are highly similar if not identical to the research chemicals with which Plaintiffs use Plaintiffs' FENBEN Marks.

96.    The marketing of chemical substances by John/Jane Does 1-10 is also highly similar to or related to Plaintiffs' retail store services featuring reagents for retail purposes.

97.    The marketing, advertising, promotion, offer for sale and sale of chemical substances by John/Jane Does 1-10 is confusingly similar to Plaintiffs' retail store services.

98.    The marketing, advertising, promotion, offer for sale and sale of chemical substances by John/Jane Does 1-10 is likely to cause confusion amongst consumers regarding Plaintiffs' retail store services.

99.    The high degree of similarity of the Parties' respective marks, and the highly related goods and services offered by the Parties, among other factors, results in a strong likelihood of consumer confusion.

100.    Defendants have acted deliberately and in bad faith, with full knowledge of Plaintiffs' established trademark rights. By way of example, in response to a takedown notice that Defendants received from non-party Amazon.com based on their improper use of the FENBEN LAB Mark in light of Plaintiffs' prior trademark rights in Plaintiffs' FENBEN Marks, Defendants acknowledged Plaintiffs' rights in Plaintiffs' FENBEN Marks and did not challenge the validity of Plaintiffs' FENBEN Marks.

101.    Upon information and belief, Defendants carry out their infringing activity in active concert and participation with other business entities with familial ties and close operational ties to Defendants.

102.    Upon information and belief, these entities and individuals coordinate their marketing and sales activity to realize a synergistic impact resulting in mass infringement of

Plaintiffs' trademark rights in Plaintiffs' FENBEN Marks effecting reputational damage to Plaintiffs' goodwill that Plaintiffs have built up in their FENBEN Marks through the serial and cumulative actions of interrelated entities and individuals.

103.    Specifically, investigation by Plaintiffs and by third parties on behalf of Plaintiffs has yielded the following information:

(a.)    Defendant Vytautus Pelakauskas holds the position Director at Defendant Canchema.

(b.)    Upon information and belief, Defendant Pelakauskas wholly owns Defendant Canchema.

(c.)    Defendant Canchema's physical location is at the address Pilakalnio g. 7, Vilnius, Lithuania.

(d.)    Defendant Canchema owns and/or operates multiple online sales outlets for its products sold and/or offered for sale under the FENBEN LAB Mark, including without limitation,

   i.   the website www.fenbenlab.com;
   ii.   the Amazon.com store "FenbenLab";
   iii.   the Bonanza.com booth "FENDA Store";
   iv.   the Bonanza.com Booth Owner account "DCA_LAB";
   v.   the website www.fendashop.com;
   vi.   the account sales@canchema.com;
   vii.   the account dcalietuva@gmail.com;

(e.)    Defendant Vytautus Pelakauskas' son, Linas Pelakauskas, holds the title of Manager at Defendant Curaltus.

(f.)    Upon information and belief, Linas Pelakauskas wholly owns Defendant Curaltus.

(g.)    Defendant Curaltus has the same physical location as Defendant Canchema at the address Pilakalnio g. 7, Vilnius, Lithuania.

(h.)    Defendant Curaltus uses the trademark FENDA, which is owned by Defendant Canchema.

(i.)    Defendant Curaltus owns and/or operates multiple online sales outlets for:

      i.    its products sold and/or offered for sale in connection with its misuse of Plaintiffs' FENBEN Marks, including without limitation:

          1.    the Amazon.com store "FenbenLab";
          2.    the Amazon.com store "DCA STORE"[1];
          3.    the Amazon.com store "DCA-LAB";
          4.    the website www.dcalab.com;
          5.    the website www.fendashop.com;
          6.    the Bonanza.com booth "FENDA Store";
          7.    the Bonanza.com Booth Owner account "DCA_LAB";
          8.    the account sales@canchema.com;
          9.    the account dcalietuva@gmail.com;

      ii.    its products sold and offered for sale under the FENBEN LAB Mark, including without limitation:

          1.    the website www.fenbenlab.com;
          2.    the Amazon.com store "FenbenLab";
          3.    the Bonanza.com booth "FENDA Store";
          4.    the Bonanza.com Booth Owner account "DCA_LAB";
          5.    the website www.fendashop.com;
          6.    the account sales@canchema.com;
          7.    the account dcalietuva@gmail.com;

(j.)    Defendant Pelakauskas' son Laurinas Pelakauskas holds the position of Director at non-party UAB Adisant (Lithuanian Business Registration No. 305506079).

(k.)    UAB Adisant has the same physical location in Lithuania as Defendant Canchema and Defendant Curaltus, at the address Pilakalnio g. 7, Vilnius, Lithuania.

---

[1] Not to be confused with the unrelated Amazon.com stores "DCA-STORE" and "DCA-Store" which have a hyphen between "DCA" and "store" and appear to sell plastic goods.

(l.)     Upon information and belief, in connection with the trademark FENZOL, UAB Adisant offers for sale and/or sells products that are similar to Plaintiffs' products sold under Plaintiffs' FENBEN Marks.

(m.)    Defendant Pelakauskas' son Lukas Pelakauskas holds the title of Manager at Defendant Canchema.

104.    This investigation has further revealed that the building located at Pilakalnio g. 7, Vilnius, Lithuania displays signage showing both "UAB Canchema – Vytautus Pelakauskas" and "UAB Curaltus – Linas Pelakauskas."

105.    Further, UAB Adisant's website displays the verbiage "Curaltus UAB is registered in the European Union" despite accurately identifying UAB Adisant's Lithuanian business registration number. Upon information and belief, the seemingly misplaced "Curaltus UAB is registered in the European Union" resulted from a clerical error and reflects shared website ownership and/or management among the above-referenced related entities.

106.    This investigation has also documented highly similar and/or identical Terms and Conditions templates. website policies templates, and website content templates across the Fenda, Fenzol, and Fenben Lab websites.

107.    Upon submission of trademark infringement takedown notices to Amazon.com based upon Defendants' infringing activities complained of herein, Amazon.com's notices to Defendant Canchema's Amazon seller account were delivered to the Gmail address dcalietuva@gmail.com. Upon information and belief, this Gmail account belongs to Linas Pelakauskas. Linas Pelakauskas is the son of Defendant Vytautas Pelaskauskas. Upon information and belief, the "dca" prefix in that email address refers to DCA-LAB. Upon information and belief, Defendant Curaltus owns the DCA-LAB brand. Thus, upon information and belief, Linas used his Curaltus business email account to manage Defendant Canchema's Amazon seller account.

108.    The substantive response to Plaintiffs' Amazon.com takedown notice, wherein Defendant Canchema argued for reinstatement of its listings featuring its FENBEN LAB Mark, was written by Defendant Vytautas Pelakauskas.

109.    Upon information and belief, the one Amazon.com storefront and seller account, branded DCA-LAB, is operated by two nominally separate companies located at the same physical address.

110.    Fenbendazole is also marketed and sold by the Defendants through the website www.fendashop.com under the brand FENDA. FENDA is identified on Trustpilot.com as "a brand of [Defendant] Curaltus Ltd." Defendant Canchema, however, is identified as the owner for a United States federal trademark application for the FENDA mark.

111.    Further the same attorney that filed the trademark application for the FENDA mark is also representing Defendant Canchema before the Trademark Trial and Appeal Board in connection with Plaintiffs' Opposition Proceeding No. 91283269 opposing registration of the FENBEN LAB Mark.

112.    Further, UAB Adisant's website has a Terms and Conditions page that identifies the operating company as "Curaltus UAB" while displaying UAB Adisant's own registration number, 305506079.

113.    Upon information and belief Defendant Vytautas Pelaskauskas is the moving, active conscious force behind all infringement and wrongful acts alleged herein. Upon information and belief, Defendant Vytautas Pelaskauskas, in actual effect, completely controls Defendant Canchema and Defendant Curaltus. Further, as explained further herein, Defendant Vytautas Pelaskauskas has used and continues to use Defendant Canchema, Defendant Curaltus, and others to perpetrate fraud and injustice. Therefore, Defendant Canchema's and Defendant Curaltus'

respective corporate veils should be pierced and liability should extend to Defendant Vytautas in his personal capacity.

114.    Upon information and belief, Defendant Vytautas Pelaskauskas has created an enterprise network.

115.    Upon information and belief, in addition to the entities and individuals identified herein, Defendants use Defendant Pelaskauskas' enterprise network to perpetuate their calculated, systematic infringement of Plaintiffs' trademark rights through other DOE entities to be named at a later time and other JOHN/JANE DOE individuals to be named at a later time. Plaintiffs' investigation into Defendants' network remains on-going.

116.    Defendants have misused the trademark symbol "®" on their products sold and/or offered for sale in connection with Defendant Canchema's FENBEN LAB Mark to imply that they own registered trademarks associated with Plaintiffs' brand, misleading consumers and further eroding Plaintiffs' goodwill.

117.    As a result of Defendants' infringing activities, Plaintiffs have suffered substantial harm, including loss of business and associated revenue, damage to their business reputation, and diminished marketplace goodwill.

118.    Defendants' actions deceive and confuse consumers, undermining the trust Plaintiffs have built with their customer base and with the consuming public more generally.

119.    Defendants have falsely represented that their products sold and/or offered for sale in connection with Defendant Canchema's FENBEN LAB Mark bear a trademark that is registered in the United States by improperly using the "®" symbol on the packaging and in consumer-facing sales materials for those products. This deceptive act misleads consumers into believing that Defendants' goods sold and/or offered for sale in connection with the FENBEN LAB Mark have the same authenticity, quality, and approval as Plaintiffs' goods.

120.    Defendants have also engaged in deceptive online marketing strategies, including the misuse of Plaintiffs' FENBEN Marks as keywords in Google Ads and other digital advertising campaigns.

121.    By incorporating Plaintiffs' protected trademarks into its keyword strategies, Defendants have intentionally diverted internet traffic and potential customers seeking Plaintiffs' FENBEN-brand products to Defendants' competing online sales outlets.

122.    Defendants have wrongly profited off of Plaintiffs' significant expenditures and years of goodwill gained from Plaintiffs' promotion of the Plaintiffs' FENBEN Marks.

123.    Defendants' actions constitute bad-faith efforts to unjustly profit from Plaintiffs' reputation, goodwill, and established customer base.

124.    Plaintiffs' FENBEN Marks are commercially strong as a result of Plaintiffs' long-standing use of Plaintiffs' FENBEN Marks and the associated extensive promotion of the Marks.

125.    Since Plaintiffs' first use of their FENBEN Marks, Plaintiffs have sold hundreds of thousands of units of Plaintiffs' FENBEN-brand products to customers throughout the United States.

126.    Upon information and belief, due to the fact that the Parties are both in the business of distributing chemical reagents such as fenbendazole, their respective products are highly similar to one another.

127.    The Parties advertise their respective goods under their respective marks through the same trade channels, including their company websites and through social media.

128.    Further, as shown below, a Google search for "Fenben" returns a result for Defendants' infringing FENBEN LAB-brand product immediately next to a result for Plaintiffs' FENBEN-brand products:



129.    Plaintiffs' customers include sophisticated and unsophisticated consumers alike; because the demographics of consumers of the Parties' respective products are wide-ranging, and unsophisticated consumers being more likely to confuse the source or origin represented by similar marks, Defendants' use of the FENBEN LAB Mark is highly likely to cause consumer confusion.

130.    Defendants' use of the FENBEN LAB Mark in commerce is likely to cause confusion, to cause mistake, and/or to deceive as to the affiliation, connection, and/or association of Defendants with Plaintiff Happy Healing and with Plaintiff Fenben; and/or as to the origin, sponsorship, and/or approval of Defendants' goods, services, and/or commercial activities by Plaintiff Happy Healing  and by Plaintiff Fenben.

131.    Defendants adopted the FENBEN LAB Mark after Plaintiffs' FENBEN-brand products began experiencing significant commercial success. Such timing further reflects the intentionality and willfulness of Defendants' infringing activities.

132.    Defendants have had actual notice of Plaintiffs' rights in the Plaintiffs' FENBEN Marks since at least as early as February 1, 2023, at which time Plaintiffs filed Opposition Proceeding No. 91283269, opposing Defendant Canchema's registration of the FENBEN LAB Mark, *inter alia*, on the grounds of likelihood of confusion and Defendants' fraudulent use of the ® symbol next to Defendant Canchema's FENBEN LAB Mark on Defendants' product packaging and consumer-facing sales materials. That proceeding remains pending.

**COUNT I**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

133.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

134.    Plaintiff Happy Healing is the owner of the following valid, protectable, and enforceable FENBEN Marks: FENBEN, FENBEN BIO, FENBEN PURE, FENBEN TRIO, and FENBEN TABS.

135.    Plaintiff Fenben is the owner of the following valid, protectable, and enforceable FENBEN Mark: FENBEN INC.

136.    Plaintiff Happy Healing is a licensee of Plaintiff Fenben's FENBEN INC. trademark.

137.    Plaintiff Fenben is the licensee of Plaintiff Happy Healing's FENBEN, FENBEN BIO, FENBEN PURE, FENBEN TRIO, and FENBEN TABS trademarks.

138.    Plaintiff Happy Healing and Plaintiff Fenben are affiliated entities, and they accrue goodwill for the other when using their family of FENBEN Marks.

139.    The FENBEN Marks serve as unique identifiers of Plaintiffs' high-quality products and have attained substantial recognition in the marketplace due to Plaintiffs' consistent efforts to ensure product integrity and to foster customer goodwill.

140.    Defendants, without Plaintiffs' authorization or consent, have used in commerce marks identical or otherwise confusingly similar to Plaintiffs' FENBEN Marks, including the use of the FENBEN LAB Mark and the use of FENBEN.

141.    The use of FENBEN and the FENBEN LAB Mark constitutes a reproduction and/or colorable imitation of Plaintiffs' FENBEN Marks.

142.    Defendants' unauthorized use in commerce of FENBEN and the FENBEN LAB Mark, in connection with products that are identical or otherwise highly similar and related to

Plaintiffs' products, is likely to cause confusion and mistake among consumers as to the source or origin represented by the Parties' respective marks.

143.    This confusion regarding the origin, sponsorship, and/or affiliation of Defendants' goods and services, is causing the public to mistakenly believe that Defendants' goods are associated with, endorsed by, or otherwise connected to Plaintiffs.

144.    Defendants' infringing activities have been and continue to be deliberate and conducted with knowledge of Plaintiffs' established rights in the FENBEN Marks and the marketplace goodwill represented by the FENBEN Marks.

145.    Defendants have acted with the intent to exploit Plaintiffs' marketplace goodwill and to misappropriate the strong business reputation associated with Plaintiffs' FENBEN Marks for Defendants' own financial benefit.

146.    As a direct and proximate result of Defendants' conduct, Plaintiffs have sustained and will continue to sustain significant injuries, including, but not limited to, lost revenue, loss of potential consumers, loss of effectiveness of advertising, harm to business reputation, diminished consumer trust, brand erosion, and loss of brand control.

147.    Plaintiffs have enforced their FENBEN Marks by sending cease and desist letters to entities that have improperly used one or more of Plaintiffs' FENBEN Marks in a manner that has potential to confuse and/or mislead consumers.

148.    Plaintiffs have suffered irreparable damage to the strength and exclusivity of their trademarks, which damage cannot be fully remedied through monetary damages alone, thereby making injunctive relief appropriate and necessary.

149.    Defendant Canchema's actions constitute trademark infringement under governing law and have caused Plaintiffs to suffer both economic and non-economic harm, for which

Plaintiffs are entitled to damages, equitable relief, and any other remedies that this Court deems necessary and appropriate.

150.    Defendant Curaltus' actions constitute trademark infringement under governing law and have caused Plaintiffs to suffer both economic and non-economic harm, for which Plaintiffs are entitled to damages, equitable relief, and any other remedies that this Court deems necessary and appropriate.

151.    Defendant Pelakauskas' actions constitute trademark infringement under governing law and have caused Plaintiffs to suffer both economic and non-economic harm, for which Plaintiffs are entitled to damages, equitable relief, and any other remedies that this Court deems necessary and appropriate.

152.    Upon information and belief, Doe Entities 1-10 have engaged in acts constituting trademark infringement under governing law and have caused Plaintiffs to suffer both economic and non-economic harm, for which Plaintiffs are entitled to damages, equitable relief, and any other remedies that this Court deems necessary and appropriate.

153.    Upon information and belief, John and Jane Does 1-10 have engaged in acts constituting trademark infringement under governing law and have caused Plaintiffs to suffer both economic and non-economic harm, for which Plaintiffs are entitled to damages, equitable relief, and any other remedies that this Court deems necessary and appropriate.

**COUNT II**
**COMMON LAW TRADEMARK INFRINGEMENT**

154.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

155.    Plaintiffs' use of the FENBEN Marks, and thus Plaintiffs' trademark rights, existed long before Defendants advertised and offered their goods using FENBEN and under the FENBEN LAB Mark.

156.    Defendants' use in commerce of the confusingly similar FENBEN and FENBEN LAB Mark in connection with the advertising and sale of goods within the same channels of trade, and territory, as Plaintiffs' FENBEN-brand goods, within the State of New Jersey without Plaintiffs' authorization, constitutes infringement of Plaintiffs' trademark rights.

157.    Defendant Canchema's actions have proximately and actually caused Plaintiffs damage in an amount to be determined at trial, and unless enjoined will continue to cause Plaintiffs irreparable harm.

158.    Defendant Curaltus' actions have proximately and actually caused Plaintiffs damage in an amount to be determined at trial, and unless enjoined will continue to cause Plaintiffs irreparable harm.

159.    Defendant Pelaskauskas' actions have proximately and actually caused Plaintiffs damage in an amount to be determined at trial, and unless enjoined will continue to cause Plaintiffs irreparable harm.

160.    Doe Entities' 1-10 actions have proximately and actually caused Plaintiffs damage in an amount to be determined at trial, and unless enjoined will continue to cause Plaintiffs irreparable harm.

161.    John and Jane Does' 1-10 actions have proximately and actually caused Plaintiffs damage in an amount to be determined at trial, and unless enjoined will continue to cause Plaintiffs irreparable harm.

**COUNT III**

## APPROPRIATION OF NAME, BRAND, TRADE-MARK, REPUTATION OR GOODWILL OF MAKER BY DEALER IN PRODUCT OF MAKER (N.J. STAT. § 56:4-1)

162.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

163.    Each of Plaintiffs' FENBEN Marks is valid and legally protectable.

164.    Plaintiff Happy Healing owns all rights to each of the following trademarks: FENBEN, FENBEN BIO, FENBEN PURE, FENBEN TRIO, and FENBEN TABS.

165.    Plaintiff Fenben owns all rights to the following trademark: FENBEN INC.

166.    Plaintiff Happy Healing is the licensee of Plaintiff Fenben's FENBEN INC. trademark.

167.    Plaintiff Fenben is the licensee of Plaintiff Happy Healing's FENBEN, FENBEN BIO, FENBEN PURE, FENBEN TRIO, and FENBEN TABS trademarks.

168.    Plaintiff Happy Healing and Plaintiff Fenben are affiliated entities, and they accrue goodwill for themselves and for each other when using their family of FENBEN Marks.

169.    Defendants' use of FENBEN and the FENBEN LAB Mark in connection with chemical reagents for research purposes is likely to cause confusion, mistake, and/or deception, on the part of consumers, who are likely to mistakenly believe that Plaintiffs are the source of such products, or that Plaintiffs sponsor such products.

170.    Defendants' actions have proximately and actually caused Plaintiffs damage in an amount to be determined at trial, and unless enjoined will continue to cause Plaintiffs irreparable harm.

## COUNT IV
## <u>DECLARATORY JUDGMENT OF FRAUD</u>

171.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

172.    The Parties are direct competitors in the fenbendazole market. Defendants have engaged in a series of acts to damage the goodwill of Plaintiffs and deter consumers from purchasing goods from Plaintiffs' online retail stores.

173.    Defendant Canchema has advertised and/or sold its goods displaying a ® registered trademark symbol on the product packaging and consumer-facing sales materials immediately adjacent to the FENBEN LAB Mark without any record of registration with the U.S. Patent and Trademark Office ("USPTO") or otherwise any governmental authority, as required for such usage.



[2]

---

2

https://web.archive.org/web/20210421030254/https://www.fenbenlab.com/product/fenbendazole
-powder/, last accessed March 6, 2026.



174.    Defendant Curaltus has as advertised and/or sold its goods displaying a ® registered trademark symbol on the product packaging and consumer-facing sales materials immediately adjacent to the FENBEN LAB Mark without any record of registration with the USPTO or otherwise any governmental authority, as required for such usage.

175.    Defendants have used the ® registered trademark symbol together with the FENBEN LAB Mark. Defendants' misuse of the ® is particularly egregious because Defendants are positioning the ® immediately adjacent to the literal elements "FENBEN LAB" thus implying that these literal elements of the mark are the subject of a federal trademark registration in the United States when they are not. To the contrary, even for the FENBEN LAB Mark (as defined above) to be approved for publication, the literal elements FENBEN LAB had to be disclaimed.

176.    Defendants, through their use of the FENBEN LAB Mark with an improper accompanying ®, has knowingly and intentionally made false, material misrepresentations to the

consuming public in the United States that it received a trademark registration from the USPTO for the FENBEN LAB Mark, and has done so with the intent to deceive the consuming public within the United States and to cause the consuming public to rely upon such misrepresentations.

177.    Upon information and belief, actual and prospective consumers of Defendants' fenbendazole products have reasonably relied upon Defendants' intentional misrepresentations.

178.    Defendants' conduct as described herein constitutes fraud on actual and prospective consumers of the Parties' goods, among others.

179.    Defendants' intentional misuse of the ® in connection with the FENBEN LAB Mark, and associated promotion of their fenbendazole products under the FENBEN LAB Mark and ®, fully warrant entry of an order by this Court declaring any trademark rights that any or all Defendants might otherwise be entitled to in the FENBEN LAB Mark, if any[3], invalid and unenforceable due to such fraud.

180.    The fraudulent nature of Defendants' use of the FENBEN LAB Mark requires that the mark be held unenforceable under the doctrine of unclean hands.

181.    Plaintiffs have sustained injury as a result of Defendants' misuse of the ® in connection with the FENBEN LAB Mark. The Parties are competitors with one another in the fenbendazole market. Defendants' fraudulent use of the ® has misled actual and prospective U.S. consumers of fenbendazole, consumers with regard to whom the Parties compete for their business, into believing that Defendants or Defendant Canchema hold(s) a federal U.S. trademark registration in the FENBEN LAB Mark, which no Defendant holds. Defendants have, therefore,

---

[3] As discussed herein in connection with Happy Healing's Claims I, II, and III, Happy Healing contends that Defendants do not possess trademark rights in the FENBEN LAB Mark when used in connection with chemical reagents for research use. Happy Healing, moreover, does not concede that Defendants possess trademark rights in the FENBEN LAB Mark when used in connection with any goods or services with which Defendants currently use the mark.

fraudulently held Defendant Canchema and Defendant Curaltus out to consumers as possessing a badge of government-recognized brand authenticity and official recognition that it did not possess. Such actions have caused substantial injury to consumers, as well as to Plaintiffs and other businesses within the fenbendazole market who have lost business and associated revenue as a result of Defendants' intentional misrepresentations and misuse of the ®.

182.    Plaintiff Happy Healing has further sustained injury as a result of Defendants' intentional misuse of the ® symbol because Plaintiff Happy Healing's pending U.S. Trademark Application Serial No. 99177679 for the standard character trademark FENBEN as used in commerce in connection with chemical reagents for research has received a provisional refusal from the USPTO pursuant to Lanham Act § 2(d) (likelihood of confusion) based upon Defendant Canchema's pending trademark application for the FENBEN LAB Mark.

183.    Plaintiffs have further sustained injury as a result of Defendants having secured enrollment on Amazon Brand Registry based on the pendency of Defendant Canchema's federal trademark application for the FENBEN LAB Mark. Equity dictates that the FENBEN LAB Mark be held unenforceable by any and all Defendants. Defendants' enrollment of the FENBEN LAB Mark in the Amazon Brand Registry has conferred upon Defendants significant strategic marketing and brand protection tools that equitable considerations counsel against according Defendants given Defendants' unclean hands as relates to their use of the FENBEN LAB Mark.

184.    As a result of Defendants' actions as complained of herein, there is an actual, justiciable, and substantial controversy between Plaintiffs and Defendants regarding Defendants' misuse of the ® in connection with the FENBEN LAB Mark.

185.    This action is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201. A final ruling by this Court will determine

whether Defendants' misuse of the ® in connection with Defendant Canchema's FENBEN LAB Mark was undertaken fraudulently with intent to deceive consumers.

186.    Defendants' rights, if any, in the FENBEN LAB Mark should be extinguished and a judgment declaring the FENBEN LAB Mark cancelled should be issued, with orders being issued directing the Amazon Brand Registry to cancel Defendants' registry for FENBEN LAB, and directing the USPTO to cancel the FENBEN LAB Mark and remove the obstacle to Plaintiffs' registration of FENBEN (U.S. Trademark Application Serial No. 99177679 for the standard character trademark FENBEN) in connection with chemical reagents for research and FENBEN INC. (U.S. Trademark Application Serial No. 97154440 for the standard character trademark FENBEN INC.) in connection with retail services featuring chemical reagents for research.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand a trial by jury with respect to those causes of action which can be tried to a jury, and respectfully pray that the Court enter judgment in their favor on each and every claim for relief set forth above and award relief including, but not limited to, the following:

    a.    A judgment that Plaintiffs' FENBEN Marks have been and continue to be infringed by Defendants in violation of federal law and New Jersey law;

    b.    A permanent injunction barring Defendants, their respective officers, agents, employees, and all persons in active concert or participation with one or more Defendants from (i) using in any media, for any purpose——such as manufacturing, importing, distributing, advertising, offering to sell, or selling— Plaintiffs' FENBEN Marks or any other mark confusingly similar to that of Plaintiffs' FENBEN Marks; and (ii) from otherwise competing unfairly with the Plaintiffs;

c.    Damages in an amount to be determined at trial;

d.    Disgorgement of the Defendants' profits;

e.    Trebling of damages for willful infringement and unfair competition;

f.    Corrective advertising;

g.    Exemplary and punitive damages;

h.    Pre-judgment interest at the legally allowable rate on all amounts owed;

i.    Entry of an Order declaring that any trademark rights that any Defendant might otherwise be entitled to in the FENBEN LAB Mark are invalid and unenforceable;

j.    Entry of an Order directing Defendant Canchema to file an express abandonment of its U.S. Application Serial No. 79330860;

k.    Entry of an Order directing the United States Patent and Trademark Office to cancel any trademark issued on Serial No. 79330860;

l.    Entry of an Order directing the Amazon Brand Registry to remove the FENBEN LAB mark from the Registry;

m.    A judgment holding that this case qualifies as exceptional, and awarding Plaintiffs' their reasonable attorneys' fees incurred in connection with this action;

n.    Costs and expenses; and

o.    Such other and further relief as this Court may deem just proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Date: March 9, 2026                             **CHIACCHIO IP, LLC**

                                                /s/ Theodore J. Chiacchio
                                                Theodore J. Chiacchio (Illinois Bar No. 6332547)
                                                **CHIACCHIO IP, LLC**
                                                1041 NJ-36 #304
                                                Atlantic Highlands, New Jersey 07716
                                                Tel: (732) 526-3672
                                                Email: tchiacchio@chiacchioip.com

                                                Adam Bialek
                                                Stephanie Nott
                                                **WILSON ELSER MOSKOWITZ EDELMAN &
                                                DICKER LLP**
                                                Adam R. Bialek
                                                Stephanie Nott (*pro hac vice* admission to be
                                                requested)
                                                150 E 42nd Street
                                                New York, NY 10017
                                                Tel: (212) 490-3000
                                                Email: adam.bialek@wilsonelser.com
                                                       stephanie.nott@wilsonelser.com

                                                ***Counsel for Plaintiffs Happy Healing Inc and
                                                Fenben Inc***