UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HAPPY HEALING INC., *et al.*,

Plaintiffs,

v.

UAB CANCHEMA, *et al.*,

Defendants.

Civ. No. 26-2430 (GC)(JBD)

**MEMORANDUM ORDER**

Before the Court is plaintiffs' motion to effect alternative service on defendants UAB Canchema ("Canchema"), UAB Curaltus ("Curaltus"), and Vytautus Pelakauskas, all located in Lithuania, by domestically serving H. David Starr, Esq. of Muncy, Geissler, Olds & Lowe, P.C., via email.  [Dkt. 7.]  Plaintiffs assert that alternative service is warranted because (1) they made "extensive efforts" to provide defendants with notice of this lawsuit; (2) their proposed method of service is not prohibited by international agreement; and (3) service upon Starr would be reasonably calculated to provide all defendants with notice of this lawsuit, as Starr has represented Canchema and Curaltus in other U.S. proceedings, and Pelakauskas has ownership interest in both entities.  [Dkt. 7-1] at 9-10.

The motion is unopposed, and no attorney has entered an appearance on behalf of any defendant.  The Court has carefully considered plaintiffs' motion papers and applicable law.  For the reasons set forth below, the Court will deny plaintiffs' motion without prejudice to their right to renew it if service cannot be effected through traditional methods, or it becomes evident that service via

traditional methods will be overly burdensome and unduly delay resolution of this case.

## I.    BACKGROUND

Plaintiffs filed this trademark infringement action against defendants Canchema, Curaltus, Pelakauskas, and several John and Jane Does and Doe Entities on March 9, 2026.  [Dkt. 1.]  Canchema and Curaltus are both limited liability companies formed under the laws of Lithuania with a principal place of business at Piliakalnio str. 7, 06229 Vilnius, Lithuania.  [Dkt. 1] ¶¶ 26-27. Pelakauskas is "an individual residing in Lithuania, who has an ownership interest in and/or controls and/or is an agent of" Canchema and Curaltus.  [Dkt. 1] ¶¶ 31-32. According to plaintiff, Pelakauskas is the "moving, active, conscious force" behind the trademark infringement allegations asserted here; he controls both Canchema and Curaltus; and he shares their known address.  [Dkt. 1] ¶ 47, 113; [Dkt. 7-1] at 5.[1]

In 2023, before filing this suit, plaintiffs initiated an opposition proceeding before the United States Trademark Trial and Appeal Board ("TTAB") to challenge Canchema's trademark application for registration of the mark at issue.  [Dkt. 7-1] at 5.  Relevant here, Starr is currently representing Canchema in that proceeding, and he represented Curaltus as recently as October 2025 in connection with a separate trademark application filed with the United States Patent and Trademark Office ("USPTO").  *Id.* at 9; [Dkt 1] ¶ 174.  Accordingly, shortly after initiating this

---

[1]    The record at this time does not reflect whether the companies' known address also is the address of Pelakauskas's personal residence.

lawsuit, plaintiffs emailed Starr a notice of lawsuit, a request to waive service, the complaint, and the summons for each of the named defendants, and they inquired whether Starr or his law firm were representing any of the defendants in this action.  [Dkt. 7-1] at 6; [Dkt. 7-2] ¶ 7; [Dkt. 7-5]; [Dkt. 7-8].  On April 3, 2026, Starr replied by email that he was "not representing any" of the defendants in this action and to date, no attorney has entered an appearance on behalf of any defendant. [Dkt. 7-1] at 6; [Dkt. 7-5].

After learning that Starr did not represent any defendant in this case, on April 5, 2026, plaintiffs attempted to notify defendants of the lawsuit by emailing the same set of documents to two "publicly available email addresses" located on Canchema's and Curaltus's respective retail websites for the products at issue in this case.  [Dkt. 7-1] at 6; [Dkt. 1] ¶ 103; [Dkt. 7-2] ¶ 7; [Dkt. 7-6]; [Dkt. 7-8]. Plaintiffs received no response and, on April 14, 2026, subsequently emailed the documents to four more email addresses connected to Canchema and Curaltus that were "listed on [defendants' company] websites."  [Dkt. 7-1] at 6; [Dkt. 7-2] ¶ 7; [Dkt. 7-7]; [Dkt. 7-8].  Having received no response to those emails either, on April 21, 2026, plaintiffs sent hard copies of the documents to defendants' collectively known address (Piliakalnio str. 7, 06229 Vilnius, Lithuania) via Federal Express.  [Dkt. 7-1] at 6; [Dkt. 7-2] ¶ 7; [Dkt. 7-10]; [Dkt. 7-11].  According to the FedEx records, the forms were successfully delivered and signed for by V. Pelakauskas.  [Dkt. 7-1] at 7; [Dkt. 7-10].  Seventeen minutes later, however, the

delivery was "refused by the recipient." [Dkt. 7-11.][2] Following this last attempt to notify defendants of this suit, plaintiffs filed the present motion for alternative service pursuant to Federal Rule of Civil Procedure 4(f)(3). [Dkt. 7.]

## II.    LEGAL STANDARDS

Federal Rules of Civil Procedure 4(f) and 4(h)(2) govern service upon individuals and entities located abroad. Rule 4(f) concerns service on an individual located in a foreign country and, unless federal law provides otherwise, it permits service by any of the following means:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by:
>>
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or

---

[2]    Plaintiffs do not argue that service was properly effected when the documents were signed for initially.

    (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

  (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).  Rule 4(h)(2) governs service on foreign corporations, partnerships, and associations, and provides that any such entity may be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."  Fed. R. Civ. P. 4(h)(2).

Accordingly, with that one minor exception, Rule 4(f) "governs service of process on defendants in foreign countries" generally, and provides "three potential methods for service:  (1) under the Hague Convention or other applicable international agreement; (2) in the absence of limitations under an international agreement, as a foreign country's law prescribes or permits or as directed by a foreign authority; or (3) by other means not prohibited by international agreement, as directed by the Court."  *Celgene Corp. v. Blanche Ltd.*, Civ. No. 16-501 (LDW), 2017 WL 1282200, at *2 (D.N.J. Mar. 10, 2017).  In addition to complying with the Federal Rules of Civil Procedure, service of process also must satisfy due process requirements, such that it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

While some courts have suggested that service under the Hague Convention is mandatory if the defendant lives in a country that is a signatory to the

convention, this Court has repeatedly held otherwise:  "Rule 4(f)'s subparagraphs (f)(1), (f)(2), and (f)(3) each provide independent and sufficient bases for service." *DUSA Pharms., Inc. v. Biofrontera Inc.*, Civ. No. 23-20601 (JBD), 2024 WL 4151169, at *3 (D.N.J. Sep. 11, 2024) (collecting cases); *accord Bravetti v. Liu,* Civ. No. 12-7492 (TJB), 2013 WL 6501740, at *3 (D.N.J. Dec. 11, 2013).  Thus, plaintiffs are "'not required to make a showing that service through ordinary channels [*i.e.*, the Hague Convention] would be futile . . . to be granted permission to effectuate service under Rule 4[(f)](3)' . . . [and] '[c]ourts can grant Rule 4(f)(3) requests even where a plaintiff does not show that the other means are unduly burdensome or impossible.'" *Vaswani, Inc. v. Manjunathamurthy*, Civ. No. 20-20288 (CLW), 2021 WL 1541071, at *1 (D.N.J. Apr. 19, 2021) (quoting *U.S. Sec. & Exch. Comm'n v. One or More Unknown Traders in Sec. of Fortress Inv. Grp., LLC,* Civ. No. 17-1287 (CCC), 2018 WL 4676043, at *7 (D.N.J. Sept. 27, 2018); *accord Bravetti,* 2013 WL 6501740, at *3.

Ordinarily, however, "a movant should attempt service by traditional means before asking the Court to exercise its discretion in directing service pursuant to Rule 4(f)(3)." *Prodigy Fin. CM2021-1 DAC v. Aboagye*, Civ. No. 25-16283 (JBD), 2026 WL 1480402, at *3 (D.N.J. May 27, 2026) (collecting cases).  Consistent with this preference, courts in this district generally require the movant to establish three factors when seeking alternative service pursuant to Rule 4(f)(3):  "(a) there is no international agreement prohibiting service by the proposed method; (b) the proposed method of service is reasonably calculated to provide the defendant notice;

and (c) they have made a good faith effort to locate and serve defendants by traditional means." *Vanderhoef v. China Auto Logistics Inc.*, Civ. No. 18-10174 (SCM), 2019 WL 6337908, at *2 (D.N.J. Nov. 26, 2019); *see also, e.g., Karcz v. El Mezouak*, Civ. No. 26-1470 (JSA), 2026 WL 496476, at *2 (D.N.J. Feb. 23, 2026). The movant bears the burden of demonstrating that each of these factors is satisfied. *Vanderhoef*, 2019 WL 6337908, at *2.

Ultimately, Rule 4(f)(3) grants the Court "wide discretion" in ordering alternative methods of service that are not otherwise prohibited by an international agreement. *U.S. Sec. & Exch. Comm'n v. Secure Cap. Funding Corp.,* Civ. No. 11-916 (DEA), 2011 WL 13143141, at *2 (D.N.J. Aug. 3, 2011); *see also Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) ("[W]e commit the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)."); *U.S. Sec. & Exch. Comm'n v. Dubovoy*, Civ. No. 15-6076 (MAH), 2016 WL 7217607, at *2 (D.N.J. Dec. 13, 2016) ("Notwithstanding Rule 4(f)(1), however, Rule 4(f)(3) grants district courts with discretionary authority to direct service 'by other means not prohibited by international agreement.'" (citation omitted)).

## III.   DISCUSSION

Plaintiffs seek to serve defendants via email to attorney Starr—who has represented Canchema and Curaltus in several domestic trademark proceedings and therefore appears to be in contact with Pelakauskas as principal of those companies—pursuant to Rule 4(f)(3).  [Dkt. 7-1.]  Although Lithuania is a signatory to the Hague Convention,[3] plaintiffs seek to bypass the Convention process in favor of their proposed method of alternative service, which they argue would streamline these proceedings and allow for the effectuation of service in a more timely manner. *Id.* at 8-10.  Specifically, plaintiffs assert that there is "no prior history demonstrating that the Lithuanian Central Authority is likely to perfect service under the Hague Convention in a reasonably timely manner," and they emphasize their "extensive efforts" to contact defendants via email and FedEx delivery and argue that requiring additional efforts to serve defendants through the Hague Convention would impose unnecessary costs and delays.  *Id.*  Plaintiffs also argue that their proposed method of service is not prohibited by international agreement and is reasonably calculated to provide all defendants with notice of this lawsuit, and, therefore, is permissible.  *Id.*

The Court denies plaintiffs' request for alternative service at this time. As noted above, the Court may permit alternative service pursuant to Rule 4(f)(3) where the movant demonstrates that (1) the proposed alternative method of service

---

[3]     *Status Table*, HCCH, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited July 17, 2026).

is not prohibited by international agreement; (2) the proposed method of service is reasonably calculated to provide notice of the lawsuit; and (3) it has made a "good faith effort" to serve the defendants traditionally. *Vanderhoef,* 2019 WL 6337908, at *2. Here, plaintiffs establish that their proposed method of service is not prohibited by international agreement and is reasonably calulcated to provide notice, but they fail to demonstrate that they have made a good faith effort at traditional service.

Regarding the first factor, the Court concludes that plaintiffs' proposed method of alternative service is not prohibited. In Lithuania, the Hague Convention is the only international agreement applicable to service by United States litigants, and there is no provision prohibiting service on a foreign defendant's domestic counsel.[4] Moreover, "[c]ourts have consistently held that service pursuant to Rule 4(f)(3) is proper when effect[ed] on a foreign individual's [United States] counsel if there is regular contact between the two, regardless of whether they have been explicitly provided the authority to do so." *Vanderhoef,* 2019 WL 6337908, at *4. Thus, the Court is satisfied that this method of service is not barred by international agreement.

The Court also concludes that plaintiffs' proposed method of service is reasonably calculated to provide defendants with notice of this lawsuit. As discussed above, Starr currently represents Canchema and recently represented

---

[4]    *Lithuania – Central Authority & practical information*, HCCH, https://www.hcch.net/en/states/authorities/details3/?aid=265 (last visited July 17, 2026).

Curaltus in trademark proceedings in the United States, thus indicating that he would be able to contact the companies and notify them of the action. [Dkt. 7-1] at 9. Further, Pelakauskas has ownership interests in (and appears to be the principal of) both entities, so any formal notice from Starr to Canchema or Curaltus would reasonably reach Pelakausakas as well. *Id.* at 5. Accordingly, it appears that there is "regular contact" between Starr and defendants such that service on Starr via email is reasonably calculated to provide defendants with notice of the present action and satisfy due process. *Vanderhoef*, 2019 WL 6337908, at *4; [Dkt. 7-1] at 9.

Plaintiffs have not, however, "made a good faith effort to locate and serve defendants by traditional means." *Vanderhoef*, 2019 WL 6337908, at *2. While plaintiffs made multiple attempts to provide defendants with notices of lawsuit, waiver forms, the summons, and the complaint via email and one attempt to provide the same to defendants via FedEx, under the circumstances, these are not sufficient "good faith effort[s]" to properly serve defendants through traditional means for purposes of Rule 4(f)(3). *Id.* Service via email is not considered a "traditional" method of service. *See Celgene,* 2017 WL 1282200, at *2 (granting alternative service via email only after plaintiffs "established its efforts to serve [defendant] personally" that were unsuccessful); *Color Switch LLC v. Fortafy Games DMCC*, Civ. No. 18-419, 2018 WL 2298401, at *2-4 (E.D. Cal. May 21, 2018) (granting alternative service via email only after process server was "unable to serve [defendant] at its only known address"). Moroever, while service by registered

10

mail is generally permissible under the Hague Convention pursuant to Article 10, Lithuania has expressly rejected this method of service by objecting to that provision of the Convention.  Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters art. 10, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163; *Declaration/Reservation/Notification*, HCCH, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=410&disp=resdn (last visited July 17, 2026).[5]  Lithuania's objection also prohibits personal service effected "directly through the judicial officers, officials or other competent persons of [Lithuania]." *Id.*  Through Lithuania's objection to Article 10, the country shows a strong preference for service through the designated Central Authority pursuant to the Hague Convention. Thus, while plaintiffs attempted generally to notify defendants of this action, none of their attempts constitute "traditional means" of service under the good faith standard because they have not attempted service through the only traditional means available here, the Hague Convention.  *Vanderhoef*, 2019 WL 6337908, at *2.

On that point, plaintiffs argue that they should not be required to attempt service via the Hague Convention before the Court authorizes alternative service because, *inter alia*, (1) a party need not exhaust all potential means of service before a Court permits alternative service pursuant to Rule 4(f)(3); and (2) it is a "virtual certainty" that the defendants have been informed of the action through the

---

[5]     That said, courts in this district have allowed *alternative* service on a foreign defendant via email under Rule 4(f)(3) despite Lithuania's rejection of Article 10, following a federal court "majority view" that emails do not constitute "postal channels." *Vaswani, Inc.*, 2021 WL 1541071, at *3-4.

11

temporary physical delivery of documents and, therefore, service through the Hague Convention would be unnecessary and cause undue delay. [Dkt. 7-1] at 8-10. While the Court agrees that service efforts under the Hague Convention need not be exhausted before resorting to Rule 4(f)(3), *see, e.g.*, *Vanderhoef*, 2019 WL 6337908, at *3 ("nothing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3)." (citation omitted)), service upon United States counsel should not be a default method for international service. *DUSA*, 2024 WL 4151169, at *6.

Indeed, although "domestic service through [Starr] is legally permissible, that does not mean that service through a law firm that does not represent a foreign defendant in the proceeding in question is typical or should be the norm," especially where, as here, Starr has indicated that he does not and will not represent any of the defendants in this action. *Id.*[6] Faced with the two options, the Court much

---

[6]    Plaintiffs also argue that "the Hague Convention 'does not apply' where, as here, service is entirely domestic, and 'does not present an occasion to transmit a judicial document for service abroad within the meaning of Article 1' of the Hague Convention." [Dkt. 7-1] at 8-9 (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707-8 (1988)). Indeed, courts have found that the Convention is only required for foreign service of documents. *See, e.g.*, *Vanderhoef*, 2019 WL 6337908, at *2-3 ("the Hague Convention does not apply because Plaintiff's proposed method of service does not require the transmittal of documents abroad"); *Glob. Trademarks, Inc. v. Zhao*, Civ. No. 24-7273 (MAH), 2026 WL 1893998, at *5 (D.N.J. July 1, 2026) ("courts in this District have held that Hague Convention service is not necessary if a plaintiff instead serves a foreign defendant via domestic means."). But plaintiffs still need to make the required showing of a "good faith effort to locate and serve defendants by traditional means" under Rule 4(f)(3) to obtain the Court's approval for such domestic service. *Vanderhoef*, 2019 WL 6337908, at *2.

prefers a good-faith attempt at service through the Hague Convention before turning to alternative methods. *See id.*; *Bravetti*, 2013 WL 6501740, at *3 ("it is helpful to plaintiff's case to show some measure of difficulty in effecting service by usual means." (citation omitted)); *Prodigy Fin.*, 2026 WL 1480402, at *3 ("[A] movant should attempt service by traditional means before asking the Court to exercise its discretion in directing service pursuant to Rule 4(f)(3).").

Moreover, while service via the Hague Convention may come with costs and cause delays, those blanket reasons do not warrant bypassing attempts at traditional methods of service in the first instance. *See Hayward Indus., Inc., v. Compupool Prod.*, Civ. No. 22-7330 (MAH), 2023 WL 3736216, at *6 (D.N.J. May 31, 2023) (denying alternate service when the plaintiff did not attempt to serve through the Hague and failed to substantiate that compliance with the Convention would be "unduly lengthy and costly"); *Global Trademarks, Inc. v. Zhao*, Civ. No. 24-7273, (MAH), 2026 WL 1893998, at *5-6 (D.N.J. July 1, 2026) (denying alternative service when the plaintiff did not attempt to serve through the Hague because it was early in the case and the "delay would be minimal"). As discussed, plaintiffs have not attempted to serve through the Hague Convention and, therefore, the Court has no indication of how long the process may take. [Dkt. 7-1] at 8. There also has not been significant progess in this case thusfar, so requiring service through the Convention will not result in undue prejudice to the parties. *Hayward*, 2023 WL 3736216, at *6.

13

That defendants may be on notice of this lawsuit by virtue of plaintiffs' emails and the temporary FedEx delivery likewise is not a sufficient reason to forego the Hague Convention process. A defendant's awareness of a lawsuit is insufficient to allow a plaintiff to bypass reasonable attempts at traditional service before requesting alternative service under Rule 4(f)(3). *See RJ Brands, LLC v. Hangdong Trading Ltd.*, Civ. No. 21-4747 (ESK), 2021 WL 3206813, at *2-4 (D.N.J. July 28, 2021) (denying alternative service because the movant failed to attempt service through the Hague Convention, reasoning this "f[ell] short of reasonable diligence" even though the defendant's domestic counsel was notified of the matter)*; DUSA*, 2024 WL 4151169, at *5-7 (denying alternative service because plaintiffs did not allow sufficient time for Hague Convention to proceed, despite there being "no reasonable debate that the foreign defendants [we]re aware of the present litigation"). The Court understands and appreciates that the Hague Convention process can be tedious, but nonetheless, it remains a viable option and, in the Court's view, still should be attempted first. The Hague Convention was specifically created to facilitate foreign service of process and reasonable attempts to serve defendants through this method should be made before alternative service can be granted in this case. Thus, as a first step, plaintiffs must make a good faith effort to serve defendants through the traditional means of the Hague Convention. If, after undertaking that process, it becomes clear that service through the Hague Convention cannot be effected or will cause inordinate delay, plaintiffs may file a renewed motion for alternative service.

14

## IV.    CONCLUSION

For the reasons stated and for good cause shown,

**IT IS** on this **17th** day of **July, 2026**, hereby

**ORDERED** that the Motion for alternative service [Dkt. 7] is **DENIED** without prejudice; and it is further

**ORDERED** that the deadline to effect service is extended to **November 20, 2026**.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE